[Cite as *State v. Williams*, 2014-Ohio-4425.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,            CASE NO.  2-13-31

    v.

LOUIS WILLIAMS, III,             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2012-CR-50

Judgment Affirmed

Date of Decision:   October 6, 2014

APPEARANCES:

    *Katherine R. Ross-Kinzie* for Appellant

    *Benjamin R. Elder*  for Appellee

**WILLAMOWSKI, P.J.**

{**¶1**} Defendant-appellant Louis Williams III ("Williams") brings this appeal from the judgment of the Court of Common Pleas of Auglaize County denying his motion to suppress, denying his motion for acquittal, finding him guilty of multiple offenses, and sentencing him to prison. For the reasons set forth below, the judgment is affirmed.

{**¶2**} On February 23, 2013, Williams was stopped by Trooper Sanchez ("Sanchez") of the Ohio State Highway Patrol for speeding shortly after 7:00 a.m. June 3, 2013 Suppression Tr. 12, 21. Sanchez testified that his radar indicated that Williams was traveling 81 miles per hour in a 65 miles per hour zone. *Id*. at 22-23. When Sanchez began the traffic stop, the vehicle came to an abrupt stop, and the driver of the vehicle extended his arm out the driver's window. *Id*. at 26. This made Sanchez uneasy, so he chose to approach the passenger side of the vehicle. *Id*. Sanchez asked Williams, as the driver, for his license and registration. *Id*. at 27. In response, Williams provided a letter size piece of paper from the Social Security Administration with the name "Michael Weeks" and a social security number. *Id*. Williams identified himself as Michael Weeks. *Id*. The paper did not have a photo on it. *Id*. at 28. Additionally, Sanchez testified that he detected a moderate odor of marijuana coming from inside the vehicle. *Id*.

**{¶3}** Sanchez then asked Williams to step out of the vehicle due to the odd form of identification and the smell of marijuana. *Id*. When asked if he had any weapons, Williams responded that he had a pocket knife on his person. *Id*. at 32. Sanchez testified that while he was speaking with Williams, Williams kept putting his hands in his pocket even after being asked not to do so. July 29, 2013, Suppression Tr. 14. Sanchez then performed a pat down search due to officer safety. June 3, 2013, Suppression Tr. 32. The search produced a loaded .22 caliber hand gun which had been in Williams' pocket. *Id*. at 32-33. Sanchez then secured Williams in his cruiser pending the arrival of backup units and investigation into whether Williams had a concealed carry permit and his correct identity. *Id. at 34.*

**{¶4}** Upon the arrival of backup units, the passengers were removed from the vehicle and a roadside search based upon the odor of marijuana was conducted. The search turned up a baggie of marijuana, and 98 methamphetamine pills. The search also revealed a wallet between the driver's seat and the center counsel, which contained an Alabama driver's license, a Visa card, a MasterCard, and a social security card all in the name of "Chase Ezell". The wallet also contained an Arizona Department of Public Safety fingerprint clearance card, a social security card, a Sams Club card; a MasterCard, and a swim club card all in the name of "Richard Smith". There was also a pawn receipt, AAA card, an

Alabama driver's license and a temporary Alabama driver's license all in the name of "Michael Weeks." The photo on "Michael Weeks" driver's license did not match the appearance of Williams. The search also produced a binder containing personal identifying information for "Tommy Smith", "Francis Martin", "Emily Burton", "Calvin Madison", "Demetrius James", Williams, "Maria Montano", "Chase Ezell", "Kenneth Lanier", "Terry Stewart", "Cordale Davis", and a marriage certificate for "Willie Spruill" and "Betty Jean Weatherspoon". After Williams was arrested, he was given his *Miranda* warnings and he signed a waiver of those rights. Williams agreed to speak and admitted to possessing the drugs, the gun, and the binder.

{¶5} On March 13, 2013, the Auglaize County Grand Jury indicted Williams on six counts: 1) Identity Fraud in violation of R.C. 2913.49, a felony of the fifth degree; 2) Carrying a Concealed Weapon in violation of R.C. 2923.12(A)(2)(F)(1), a felony of the fourth degree; 3) Possessing a Weapon While Under a Disability in violation of R.C. 2923.13(A)(3), a felony of the third degree; 4) Possession of Drugs in violation of R.C. 2925.11(A)(C)(1)(c), a felony of the second degree; 5) Receiving Stolen Property in violation of R.C. 2913.51(A), a felony of the fifth degree; and 6) Tampering with Evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree. Doc. 5. On March 21, 2012, Williams filed a motion for a bill of particulars and a written demand for

discovery. Doc. 14, 15. Williams also entered a written plea of not guilty and waived arraignment in open court. Doc. 17. The State filed the bill of particulars on March 26, 2013. Doc. 20.

{¶6} On April 19, 2013, Williams filed a motion to suppress all the evidence alleging that the initial search of the vehicle was improper. Doc. 37. A hearing was held on June 3 and July 29, 2013. Doc. 90. On September 10, 2013, the trial court entered its judgment denying the motion to suppress. *Id.* On September 16, 2013, the State moved in open court to dismiss Count Three of the indictment, which was granted by the trial court. Doc. 107.

{¶7} A jury trial was held from October 2 to October 3, 2013, on the remaining counts of the indictment. Doc. 144. The jury returned verdicts of guilty on Counts One, Two, and Four. *Id.* The jury returned a verdict of not guilty as to Count Five. *Id.* The jury found Williams not guilty of Count Six, but guilty of the lesser included offense of Attempted Tampering with Evidence in violation of R.C. 2921.12(A)(1)/2923.02(A), a felony of the fourth degree. *Id.* A sentencing hearing was held on November 19, 2013. Doc. 157. The trial court ordered that Williams serve eleven months in prison for Count One, seventeen months in prison for Count Two, seven years in prison for Count Four, and seventeen months in prison for Count Six. *Id.* The trial court ordered that the sentences for Counts One, Two and Six were to be served consecutive to each

other, and Count Four was to be served consecutive to Count Two, but concurrently with Counts One and Six. *Id.* Williams filed his notice of appeal on December 18, 2013. Doc. 171. On appeal Williams raises the following assignments of error.

### First Assignment of Error

**[Williams'] conviction for possession of drugs must be reversed because the key evidence supporting the conviction was gathered by state troopers without a search warrant in violation of [Williams'] rights under the United States and Ohio Constitutions.**

### Second Assignment of Error

**[Williams] was deprived of his right to the effective assistance of trial counsel when trial counsel failed to raise the unreasonableness of the search in his motion to suppress.**

### Third Assignment of Error

**The trial court erred when it denied [Williams'] Crim.R. 29(A) motion for acquittal on Count I, identity fraud, because the conviction is not supported by sufficient evidence. The State presented insufficient evidence to support all of the essential elements of the charge of identity fraud beyond a reasonable doubt, and [Williams'] conviction for identity fraud therefore violates his rights to due process.**

### Fourth Assignment of Error

**[Williams] was deprived of his right to the effective assistance of trial counsel when trial counsel failed to request a waiver of court costs at sentencing.**

In the interests of clarity, we will address the assignments of error out of order.

{¶8} Williams alleges in the first assignment of error that the trial court erred in denying his motion to suppress because the car was searched incident to arrest.[1] A search is reasonable pursuant to the Fourth Amendment if it is based upon probable cause and executed pursuant to a warrant. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). This requires first that there be probable cause, which is a reasonable grounds for the belief of guilt. *State v. Moore*, 90 Ohio St.3d 47, 2000-Ohio-10, 734 N.E.2d 804. "Probable cause must be based upon objective facts that would justify the issuance of a warrant by a magistrate." *Id.* at 49. Once probable cause is found, an officer must obtain a search warrant unless an exception to the warrant requirement applies. *Id.* "If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed." *Id.* (citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). In *Moore*, *supra*, the Ohio Supreme Court held that the odor of marijuana provides probable cause for a search. *Id.* "The well-established automobile exception allows police to conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband or other evidence that is subject to seizure, and exigent circumstances necessitate a search or seizure." *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992).

---

[1] Although this was not the grounds upon which the motion to suppress was requested below, the trial court did address the legitimacy of the search of the vehicle in its judgment. Additionally, the question is also raised in the second assignment of error. Thus, we will address the issue here as well.

{¶9} The U.S. Supreme Court has set forth the rule for searches of automobiles incident to arrest in *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). In *Gant*, the defendant was arrested for driving on a suspended license, handcuffed, and locked in a patrol car. The officers then proceeded to perform a warrantless search of his vehicle incident to his arrest. During the search, the officers found cocaine in a jacket pocket. In determining whether the warrantless search was permissible, the U.S. Supreme Court held as follows.

> **Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.**

*Id*. at 1723-24.

{¶10} This court has previously addressed the holding in *Gant.* In *State v. Sheridan*, 3d Dist. Allen No. 1-10-50, 2011-Ohio-6011, the defendant was observed driving a vehicle which made a wide turn. The vehicle then parked and the driver, along with a passenger, got out and began walking away. The officer approached the men and asked the driver for identification. The driver admitted he did not have a driver's license and he was then arrested and placed in the back

of the officer's cruiser. Backup units had arrived and were speaking with the passenger. The officer then went over to the vehicle and searched it, finding a loaded handgun wedged between the driver's seat and the center console. The defendant was eventually charged with carrying a concealed weapon. The defendant challenged the search before the trial court because the officer stated that he searched the vehicle incident to the defendant's arrest for driving without a license. The trial court denied the motion to suppress the results of the search. On appeal, this court reversed holding that since the defendant was unable to reach the vehicle and since there was not likely to be any evidence related to the offense for which the defendant was arrested, driving without a license, the search incident to arrest was improper. This court then reversed the trial court's denial of the motion to suppress because the State had failed to present any other justification for the warrantless search.

{¶11} We addressed the same issue in *State v. Morelock*, 3d Dist. Allen No. 1-12-21, 2013-Ohio-641, but reached a different result. In *Morelock*, the defendant was observed parking his vehicle in front of a known drug house in a high crime area. An officer ran the plates and was informed that they were invalid. When Morelock left the house a few minutes later, the officer initiated a traffic stop, but Morelock did not stop immediately, but took his time. As the officer was approaching, Morelock made furtive movements, which concerned the

officer that Morelock was either trying to hide contraband or a weapon. Morelock was instructed to exit the vehicle where he was moved to the side of the road with another officer. The stopping officer then looked into the vehicle where he had seen the movement and observed a wadded up tissue. The tissue was retrieved and crack cocaine was found inside it. Morelock was then arrested. Morelock's subsequent motion to suppress the search as incident to arrest was overruled. On appeal, this court affirmed the holding of the trial court because the search was not incident to arrest because Morelock had not been arrested and was not likely to have been arrested for invalid plates. The search of the vehicle was done for the purpose of officer safety and was limited to the area in which the officer was concerned that Morelock might have hidden a weapon based upon what the officer observed. In addition, Morelock, unlike Sheridan, arrived in a high crime area at 1:15 a.m., parked in front of a known drug house, entered the house and left a couple minutes later, drove off, hesitated before stopping when the officer activated his lights, and made furtive movements in the vehicle. All of these factors, when taken together, gave the officer probable cause to search the vehicle under the automobile exception to the warrant requirement. Thus, this court held that the *Gant* holding did not apply because there was another exception to the warrant requirement.

{¶12} In this case, the facts are more like those in *Morelock* than those in *Gant* or *Sheridan*. The defendant was pulled over for driving at an excessive rate of speed on the interstate. When the officer approached the car, he noted a strong smell of marijuana coming from the car. The identification presented to him was unusual. When being questioned, Williams kept trying to put his hands in his pocket even after being asked not to do so. When Williams was searched, the officer found a loaded handgun in Williams' pocket, though the defendant had not informed the officer about the weapon when asked. Given all of these factors, the officer had probable cause to believe that a crime involving contraband had occurred and to search the vehicle for that contraband. Although Williams was under arrest, the passengers were not at that time, and could have driven the vehicle away. There were exigent circumstances and the automobile exception applied in this case. Since another exception to the warrant requirement, besides a search incident to arrest applied in this case, *Gant* does not. The trial court did not err in denying the motion to suppress and the first assignment of error is overruled.

{¶13} In the third assignment of error, Williams argues that his conviction for identity theft was not supported by sufficient evidence and the trial court should have granted his motion for acquittal.

> **Crim.R. 29(A) provides that a court must order the entry of a judgment of acquittal of a charged offense "if the evidence is insufficient to sustain a conviction of such offense[.]" However,**

-11-

> **"a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus. Thus, a motion for acquittal tests the sufficiency of the evidence. *State v. Tatum,* 3d Dist. Seneca No. 13–10–18, 2011-Ohio-3005, ¶ 43.**

*State v. Kaczmarek*, 3d Dist. Hancock No. 5-12-32, 2013-Ohio-5658, ¶ 20.  When determining whether the evidence is sufficient to support a criminal conviction, the appellate court must inquire as to whether, after viewing the evidence in a light most favorable to the State, a rational trier of fact could have found the material elements of the crime proven beyond a reasonable doubt.  *State v. Tibbetts*, 92 Ohio St.3d 146, 161-62, 2001-Ohio-132, 749 N.E.2d 226.  "We will not overturn a conviction for insufficiency of the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." *Id*.

{¶14} Here, the State charged Williams with Identity Fraud.

> **(B)  No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with the intent to * * ***

> **(2)  Represent the other person's personal identifying information as the person's own personal identifying information.**

R.C. 2913.49(B)(2).  Williams claims that the State did not prove that he lacked consent of Michael Weeks to use his identifying information.  A review of the

record indicates that the issue of consent was not addressed at the trial. However, the same statutes provides as follows.

> **(2) It is an affirmative defense to a charge under division (B) * * * of this section that either of the following applies:**
>
> **\* \* \***
>
> **(b)    The personal identifying information was obtained, possessed, used, created, or permitted to be used for a lawful purpose * * *.**

R.C. 2913.49(F)(2)(b).  "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused."  R.C. 2901.05(A).  In addition, it would not be "for a lawful purpose" to present another's identification to an officer and claim to be that person when stopped for a traffic violation.  Given the failure of the defense to present evidence regarding the affirmative defense of consent, the trial court did not err in denying the Crim.R. 29 motion for acquittal as to Count One.  The third assignment of error is overruled.

{¶15} The second and fourth assignments of error both allege that Williams was denied effective assistance of counsel.

> **In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step**

-13-

> **process is usually employed. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.**
>
> **On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent. See Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164; \* \*915 State v. Jackson, 64 Ohio St.2d at 110–111, 18 O.O.3d at 351, 413 N.E.2d at 822.**

*State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999–Ohio–102, 714 N .E.2d 905.

{¶16} Williams alleges in the second assignment of error that counsel was ineffective for failing to raise the unreasonableness of the search in his motion to suppress. This court notes that although trial counsel did not raise the issue of the search of the car in the motion to suppress, the trial court did consider the search and found it to be constitutional. This court has reviewed the issue above and found the search to be based upon probable cause and an exception to the warrant requirement pursuant to the automobile exception. Since the search was permissible, trial counsel did not err by failing to challenge the search in the motion to suppress. The second assignment of error is overruled.

{¶17} In the fourth assignment of error, Williams claims his counsel was ineffective for failing to request a waiver of court costs at sentencing.

> **(A)(1) In all criminal cases, including violation of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, including any costs under [R.C. 2947.231], and render a judgment against the defendant for such costs. * * ***
>
> **\* \* \***
>
> **(C) The Court retains jurisdiction to waive, suspend, or modify the payment of costs of prosecution, including any costs under [R.C. 2947.231] at the time of sentencing or at any time thereafter.**

R.C. 2947.23. This very issue has been addressed by this court in *State v. Weimert*, 3d Dist. Auglaize No. 2-10-35, 2011-Ohio-2846. In *Weimert*, the defendant claimed trial counsel was ineffective for failing to object to the imposition of court costs even though the defendant was indigent. This court held that since the Ohio Supreme Court, in *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, requires all courts to assess court costs against all convicted defendants, counsel cannot be ineffective for failing to object to the trial court doing so. *Weimert, supra* at ¶ 9. Additionally, since the release of *Weimert*, the statute has been amended. The new version of the statute went into effect on March 22, 2013, and is cited above. This version, unlike the one in *Weimert*, provides the trial court with ongoing jurisdiction to waive, suspend or modify costs at sentencing or at any time after sentencing. Thus, even if counsel should

-15-

have objected to the imposition of costs, the error is not prejudicial. The fourth assignment of error is thus overruled.

{¶18} Having found no error in the particulars assigned and argued, the judgment of the Court of Common Pleas of Auglaize County is affirmed.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**